RAULINS v. MEMPHIS UNION STATION CO. (INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, SYSTEM COUNCIL NO. 10, ILLINOIS CENTRAL SYSTEM, Third-Party Defendant).

ROGERS v. MEMPHIS UNION STATION CO. (INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, SYSTEM COUNCIL NO. 10, ILLINOIS CENTRAL SYSTEM, Third-Party Defendant).

DAVIS v. MEMPHIS UNION STATION CO. (INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, SYSTEM COUNCIL NO. 10, ILLINOIS CENTRAL SYSTEM, Third-Party Defendant).

No. 10567.

Circuit Court of Appeals, Sixth Circuit.
June 1, 1948.

Edward N. Vaden, of Memphis, Tenn., (Herbert A. Bergson, Philip W. Yager, and Geoffrey N. Mann, all of Washington, D.C., and William McClanahan and Edward N. Vaden, both of Memphis, Tenn., on the brief), for appellants.

Vance Alexander, Jr., of Memphis, Tenn. (Edward P. Russell, of Memphis, Tenn., on the brief; Canada, Russell & Turner, of Memphis, Tenn., of counsel), for appellee.

Richard R. Lyman, of Toledo, Ohio (Jim C. Galloway, of Memphis, Tenn., and Richard R. Lyman, of Toledo, Ohio; Mulholland, Robie & McEwen, of Toledo, Ohio, of counsel), for International Brotherhood of Electrical Workers of America.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

These three actions were separately filed by the appellants, Claude Abijah Raulins, Joseph Edgar Rogers, Jr., and Toyee Glenn Davis, in the District Court against the appellee, Memphis Union . Station Company, pursuant to the provisions of § 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308, and the Service Extension Act of 1941, as amended, 50 U.S.C.A.Appendix, § 351 et seq., to compel the Station Company to restore the appellants to positions of electrician, and to compensate them for any loss of wages suffered by reason of the Station Company's alleged unlawful action in failing to comply with the provisions of the Act. The District Judge dismissed the

468

three actions. These appeals which followed were heard together in this Court.

Raulins was employed by the Station Company as an electrician helper on September 6, 1940. He entered the Air Corps on May 21, 1942, and was honorably discharged on November 23, 1945. He was reemployed as electrician-helper on December 3, 1945, promoted to electrician on February 21, 1946, and reduced to electrician-helper on May 5, 1946.

Rogers was employed by the Station Company as electrician-helper on May 14, 1941. He entered the Navy on September 18, 1942 and was honorably discharged on November 23, 1945. He was reemployed as electrician-helper on December 10, 1945, promoted to electrician on February 21, 1946 and reduced to electrician-helper on May 6, 1946.

Davis was employed as electrician-helper on October 5, 1942. He entered the Navy on January 12, 1943, and was honorably discharged on February 19, 1946. Following timely application for reemployment, he notified the Station Company on May 4, 1946 that he would return to work. The Station Company advised him on May 6, 1946 that all electrician-helpers employed at that time were senior to him and that there were no vacancies.

The position of electrician in the employ of the Station Company is one of higher wages and requires a higher grade of technical ability than that of electrician-helper. While the appellants were in the armed forces the Station Company on July 19, 1943 promoted A. E. Turner, who had been employed as electrician-helper on May 25, 1942, to electrician. On August 7, 1943, it promoted V. F. Black, who had been employed as electrician-helper on December 3, 1942, to electrician. On June 29, 1945, the Station Company employed McDaniel as electrician, and on October 17, 1945, it also employed Verhine as electrician. Neither McDaniel nor Verhine had been previously employed as electrician-helper. It will be noted that appellants Raulins and Rogers were senior to both Turner and Black as electrician-helpers and that appellant Davis was senior to Black as electrician-helper. Yet Turner and Black

were promoted to electrician and retained in that position, while appellants Raulins and Rogers, although promoted to electrician after reemployment, were later reduced to electrician-helper, and Davis was not reemployed. This alleged preferential employment of Turner and Black to the prejudice of the returning service men is the basis of the suits.

Section 8 of the Selective Training and Service Act provides that any person inducted for training and service, who in order to perform such training and service has left a position, other than a temporary position, in the employ of any employer, has satisfactorily completed his period of training and service, is still qualified to perform the duties of such position, and makes application for reemployment within time specified, shall be restored by the employer "to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." It also provides that any person so reemployed "shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority,· * * *." Appellants claim that if they had remained in the employ of the Station Company instead of inducted into service they would have received the promotions to electrician in preference to Turner and Black, and that under the above provisions of the Act they are entitled to this priority over Turner and Black upon their reemployment by the Station Company. They base their claims upon the provisions of the Collective Bargaining Agreement between the Union and the Station Company, and also upon the alleged established custom of filling vacancies in the position of electrician by appointment of those having the highest seniority in the position of electrician-helpers.

The Collective Bargaining Agreement, executed August 1, 1938, contained the following provisions:

"Rule No. 10. Seniority. * * *

"(2) Seniority of employees in each craft shall be confined to the seniority sub-

division in which employed, except the past practice of Helpers retaining seniority as Helpers when promoted to other positions in their craft will prevail.

"Rule No. 12. New Positions and Filling Vacancies.

"(1) New jobs created or vacancies in respective crafts will be bulletined for five (5) days and the oldest employees in point of service shall, if sufficient ability is shown by fair trial, be given preference in filling such jobs or any vacancies that may be desirable to them, unless the Management and the Committee agree that the senior bidders are not qualified. * * *

"(2) Employees desiring to avail themselves of this rule will make application in writing to the official in charge and copy of application will be given to Local Committeeman.

"(3) An employe exercising his seniority or assigned under Section 1 of this Rule, if, after fair trial, fails to qualify, may return to his former position with full seniority rights. Employes exercising their seniority rights under this Rule, will do so without expense to the Company."

The agreement provided for separate seniority lists for each craft and sub-division thereof, and classified members of the Electrical Workers craft into four sub-divisions, namely, electricians, motor attendants, apprentices and electrician-helpers.

The District Judge held that under the Collective Bargaining Agreement the electricians had seniority rights among themselves; that the electrician-helpers had seniority rights among themselves; that the seniority system for electricians was wholly separate from that applicable to electrician-helpers, and that the appellants at the time when they left their positions as electrician-helpers had no fixed right to promotion from the position of electrician-helper to the position of electrician by virtue of any custom or by virtue of any contract, written or otherwise; that while the electrician-helper, oldest in point of service, was usually given preference in filling vacancies on the electrician roster, other things, particularly qualifications, required consideration; and that while the Act guaranteed them their seniority in the subdivision of electrical workers, it did not guarantee them promotion to vacancies occurring in the sub-division of electricians.

█ We agree with that ruling. The Collective Bargaining Agreement does not make promotion from electrician-helper to electrician in case of vacancy an automatic one. It plainly provides application on the part of the electrician-helper, proof of his qualification for the promotion by actual trial, and for a return to his former position as electrician-helper with full seniority rights if he fails to qualify after a reasonable trial. Although there is a strong probability that the appellants would have applied for promotion to the vacancies and would have been qualified, yet such promotion was not a matter of right or of certainty merely because of seniority. If the appellants had been on furlough or leave of absence, instead of in the service, when the vacancies occurred, they would not have obtained the promotions which they are now claiming. Section 8 of the Act provides that the employee shall be considered as having been on furlough or leave of absence during his period of training. Rule 13 of the Collective Bargaining Agreement, dealing with leave of absence, provided for such a leave for a period not exceeding 30 days with privilege of renewal, but made no provision that an employee who has been absent upon leave may upon returning exercise those rights that would have been available to him if he had not been absent.

█ Appellants rely strongly upon certain statements of the Supreme Court in its opinion in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S. Ct. 1105, 1111, 90 L.Ed. 1230, 167 A.L.R. 110. In that case the Supreme Court ruled that the legislation was to be liberally construed for the benefit of the returning veteran, and that "He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job." The Court said,—"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continu-

ously during the war." We think it clear, however, that such expressions were dealing with the question of seniority, the veteran's retention of it while absent, and his increased seniority through the passage of time upon his return to his former position. No other rights were involved in that case. The expressions are not logically susceptible of the construction that the Act guaranteed to the veteran while in service any rights which he might possibly have been able to obtain, although by no means a certainty, if had been working on the job instead of being in the service. The Court made this plain when it said,— "He is thus protected against receiving a job inferior to that which he had before entering the armed services," and—"As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence." Our construction of the Act and of the ruling in Fishgold v. Sullivan Drydock and Repair Corporation, supra, is in accord with other decisions of the Federal courts. Hewitt v. System Federation No. 152, Etc., 7 Cir., 161 F.2d 545; Huffman v. Norfolk & Western Ry. Co., D.C.W.D.Va., 71 F. Supp. 564; Woods v. Glenn Alden Coal Co., D.C.M.D.Pa., 73 F.Supp. 871.

■ The District Judge found against appellants' contention that irrespective of the written contract they had superior rights to those of Turner and Black by reason of custom or verbal agreement. He found that no valid agreement, either verbal or written, granting the appellants such seniority had even been consummated. The evidence shows without contradiction that the Station Company employed as electricians in 1945 McDaniel and Verhine, without either of them having been previously employed as helpers. Appellants do not complain of these employments and do not ask for seniority rights ahead of them. The District Judge's findings in this respect are fully sustained by the evidence.

The Station Company made the Union a third-party defendant contending that the Union should be held liable for such sums as the appellants might recover from the Station Company, because of its objections to the Station Company's action in promoting appellants to the position of elec-

trician, thus causing their demotion. The District Judge dismissed the third-party complaint. In view of the affirmance of the judgment in favor of the Station Company, it becomes unnecessary to consider the question involved in the third-party complaint.

The judgment of the District Court is affirmed.