ARMSTRONG v. TENNESSEE COAL, IRON & R. CO.

Civil Action No. 5901.

District Court, N. D. Alabama, S. D.

July 9, 1947.

John D. Hill, U. S. Atty., and Osce M. Bentley, Asst. U. S. Atty., both of Birmingham, Ala., for plaintiff.

Benners, Burr, Stokely & McKamy and Andrew J. Thomas, of that firm, all of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This is a proceeding under the Selective Training and Service Act of 1940, as amended, particularly under Section 8(e), 50 U.S.C.A.Appendix, § 308(e). On July 1, 1947, this cause came on to be tried before the Court without a jury. From the evidence introduced by both the petitioner and the respondent in said trial and from the exhibits on file in said case, the Court finds as follows:

Findings of Fact.

1. Petitioner is a resident of Alabama and resides at Powderly, Alabama.

2. Respondent is a corporation, and maintains a place of business at Birmingham, Alabama.

3. Beginning on the 3rd day of October, 1940, and until the 16th day of February, 1943, petitioner was in the employ of the respondent at its Ore Conditioning Plant, Wenonah Ore Mine. On the 18th day of July, 1942, petitioner was promoted to the position of First Class Repairman Helper and this position was not temporary and the petitioner was so employed at the time he left the employ of the respondent to serve in the United States Army.

4. Petitioner left his aforesaid position of First Class Repairman Helper on the 16th day of February, 1943, for the purpose of entering into the training and service of the military forces of the United States.

5. Petitioner satisfactorily completed his period of training and service in the United States Army on the 5th day of January, 1946, and on that date received a certificate of honorable discharge.

6. On the 20th day of March, 1946, being within ninety days after petitioner was released from such training and service as aforesaid, petitioner was reemployed by the respondent in the position of First Class Repairman Helper.

7. Petitioner was a member of the International Union of Mine, Mill and Smelter Workers, Local No. 639, on and prior to February 16, 1943, as well as on and subsequent to March 20, 1946, and this Union was the exclusive collective bargaining representative of all employees of the respondent at its Ore Conditioning Plant, Wenonah Ore Mine.

8. On December 10, 1943, during petitioner's absence from the employ of respondent and while he was serving in the United States Army, the respondent and the International Union of Mine, Mill and Smelter Workers, Local, No. 639, entered into a written agreement purporting to clarify the prevailing rules governing seniority to be observed in filling permanent vacancies in the lines of promotion and to accord to the factor of continuous service added significance in regard to promotions. This agreement, in pertinent part, reads as follows:

"4. Filling Permanent Vacancies:

"When a permanent vacancy occurs in any occupation covered by the 1943 Agreements, the employee with the greatest length of continuous service on the occupation immediately preceding the vacant occupation in the divisional line of promotion for the work involved, shall be offered the promotion to the vacancy, provided his ability to perform the work and his physical fitness are relatively equal to that of other employees in the same line of promotion.

"The appointment to fill the vacancy will be made by Management as soon as practicable, and either prior to or at the time the appointment is made, the name of the employee selected by Management to fill the vacancy will be posted on the bulletin board, in accordance with the memorandum of agreement between the Company and the Union dated October 13, 1942, which shall continue in effect.

"Should such employee be unable to fill the vacancy because of illness or other causes, through no fault of his own, the next qualified employee in line shall temporarily be assigned to the vacancy pending the return to work of the first mentioned employee. In the calculation of continuous service in the occupation within the division in such a case, the first mentioned employee shall be given credit for the time the latter employee worked on the occupation, and the latter employee shall receive no credit therefor, the same being considered as time worked in an emergency. (This provision does not apply to employees inducted in the military forces during the present emergency, unless such an employee has age on the occupation under consideration.)"

The foregoing parenthetical exception of employees serving in the military forces from the beneficient operation of this agreement was included for the purpose of protecting employees who did not enter the armed services in the tenure of their relative positions against the claims of returning veterans. Its factual effect was to discriminate against such veterans.

9. During petitioner's absence from the employ of respondent and while he was serving in the United States Army, the respondent, in accordance with the foregoing agreement, promoted several persons who were junior in seniority to the petitioner as First Class Repairman Helper, to the position of Second Class Repairman.

10. Petitioner was qualified for the position of Second Class Repairman at the time he was reemployed by respondent.

11. On December 12, 1946, the International Union of Mine, Mill and Smelter Workers and the respondent entered into a supplemental agreement providing in effect for the promotion of all veteran employees to the position they would have occupied had they not left the employ of respondent to enter the armed services, and pursuant to that agreement petitioner was promoted to the position of Second Class Repairman on December 23, 1946, and given seniority over all employees who were junior to him at the

332

time he left to enter the United States Army.

12. The petitioner was not given retroactive pay as Second Class Repairman from March 20, 1946, to December 22, 1946, inclusive.

13. On March 20, 1946, the position of First Class Repairman Helper paid an hourly wage of $1.01–½, and the hourly wage rate has not been changed to date. On March 20, 1946, the position of Second Class Repairman paid an hourly wage of $1.16, and the hourly wage rate has not been changed to date.

## Conclusions of Law.

■ 1. The Court has jurisdiction of the parties and the subject matter by Section 8, subsection (e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix § 308(e), herein referred to as the Act, even though the only relief to which petitioner has shown himself entitled is a judgment for back wages.

■ 2. The term "restore such person to such position" as used in the Act, 50 U.S. C.A.Appendix, § 308(b) (B), means a reinstatement of such person to the same relative place, rank or standing in the employment of his employer as he would have had if he had not been required to leave his employment for World War II training and service in compliance with the Act. The Act does more than restore the World War II veteran to the status quo ante. It gives him the full benefit of whatever added rights would have accrued to him under his contract of employment or under any contract or statute which inured to his benefit as such an employee if he had remained in his position instead of being inducted into the service. If the seniority accumulated during the time he was in the service entitled him, as a matter of contract, to a better job classification than he had at the time he left to enter the service, it is the duty of the employer, to give him this better classification.

■ 3. The Selective Training and Service Act of 1940, as amended, required that the honorably discharged veteran shall be given a better position than that which he occupied prior to his induction if his contractural seniority rights entitle him to such better position.

■ 4. The returning veteran is entitled to the benefits of any contracts that were made in his absence but such parts of any contract entered into during his absence that discriminate against veterans are void.

[5] 5. The effect of the above quoted agreement was to entitle petitioner, who was physically fit and who had the ability to perform the work, to the first permanent vacancy in the position of Second Class Repairman, in accordance with his seniority as a First Class Repairman Helper. Therefore, pursuant to the terms of said agreement, since petitioner was unable to fill such vacancy because of his absence in the military service, through no fault of his own, the assignment of his immediate junior to the vacancy was temporary (as in the case of emergency) and petitioner was entitled to receive credit for the time worked by his said junior on the occupation. The attempted exclusion of employees in the military service from the operation of this agreement, entered into in their absence, was discriminatory and ineffective. Only the exception falls and it follows that the result obtains that the veteran and non-veteran employees retain the benefits on a parity with each other.

■ 6. Petitioner was entitled to be reemployed by the respondent in the position of Second Class Repairman on March 20, 1946, and is entitled to recover from the respondent the difference in pay he received in the position of First Class Repairman Helper and the pay he would have received in the position of Second Class Repairman from March 20, 1946, to December 22, 1946, inclusive.

## Judgment.

1. It is, therefore, ordered adjudged, and decreed by the Court that the respondent pay to petitioner compensation for his loss of wages in said position from March 20, 1946, to December 22, 1946, inclusive, viz., 1,428 hours @ $1.16 per hour ($1,656.-48), less 1,400 hours @ $1.01½, ($1,421), and 28 hours @ $1.09 per hour ($30.52), or $204.96 less the ordinary deductions for

State Unemployment Compensation, Federal Social Security and Federal Withholding Taxes. The Court costs also are hereby taxed against the respondent.

2. That jurisdiction of this case, for any further necessary proceedings, is retained until the respondent shall have complied with the requirements of paragraph one of this judgment.