## ALTGENS et al. v. THE ASSOCIATED PRESS.

### No. 13321.

United States Court of Appeals
Fifth Circuit.

May 4, 1951.

L. N. D. Wells, Jr., Dallas, Tex., for appellants.

Eugene M. Locke, Dallas, Tex., for appellee.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This suit arose under the Selective Training and Service Act of 1940, as amended, Section 8(d), 58 Stat. 798, 50 U.S.C.A.Appendix, § 308(d). Appellants, wirephoto operators working in appellee's Dallas, Texas, bureau, brought this action to recover the sums of $2010 and $1737.50, respectively, as wages, which they alleged that the appellee had failed to pay them upon their reemployment following military service in World War II. The appellee defended on the grounds that the claims were barred by laches and the Texas statute of limitations. It further asserted that the appellants had been restored to their seniority and all other benefits to which they were entitled under the statute. The trial court heard the case, without a jury, and found no merit to the defenses of laches and the statute of limitations, and further found that the appellants were given all of their rights to which the Veterans Act entitled them. Accordingly, the court below rendered judgment for the employer, and this appeal was taken by the two employees.

Prior to World War II, appellants (Altgens and Powers) were employed by the Associated Press. In 1944, when Powers left for the service, he was a regular wirephoto operator earning $42.34 per week. In 1941, when Altgens enlisted in the armed forces, he was working as a wirephoto operator for 14 hours per week, and as a printer attendant for 26 hours per week. His total weekly wage for his combined duties was $25.31. Appellants' wages and working conditions were fixed pursuant to a collective bargaining contract, which provided a weekly base wage in addition to night and seniority differentials. The contract also required that a seniority list of wirephoto operators be appended to it, which list showed Altgens with wirephoto seniority from February 11, 1940, and Powers with wirephoto seniority from August 17, 1941.

While appellants were in the armed forces, the appellee-employer changed its method of compensating wirephoto operators. Instead of the weekly base pay provided in the collective bargaining contract, it instituted a step-rate system of compensation. This system was set out in writing in the bargaining contract of May 15, 1945, and succeeding collective bargaining contracts continued the same system. The employer continued to give extra pay as night and seniority premiums in addition to the step-rate differentials.

When the appellants returned for their jobs after being discharged from their military service, they were promptly restored to their former positions at higher salaries than they were receiving when they entered the service. Altgens was making $25.31 per week when he left, and was reemployed as a full-time wirephoto operator when he returned at a wage of $44 per week. When Powers left he was earning $42.34 per week, and when he returned he was reemployed at $52 per week. At the time this suit was tried, Altgens and Powers were still employed as wirephoto operators by appellee at its Dallas office, earning weekly wages of $81.75 and $85.50, respectively.

When appellants were reemployed, they were given all the seniority rights to which they were entitled, but were not credited with wirephoto employment for the periods of their military duty; they were credited with only such wirephoto employment as they had actually engaged in prior to their entry into the service. Appellants contend that this failure to credit them with wirephoto employment for the periods that they were in the service substantially and prejudicially deprived them of wages to which they were entitled. Appellants base their contention on the language of the collective bargaining contract, which makes wirephoto employment prerequisite to periodic salary advances; and they urge that, under the collective bargaining contract, progression up the step-rate ladder was automatic upon the passage of time; that no skill, special aptitude, or qualification, was required other than a specified time at wirephoto employment; and that, had they not been at war, they would have continued in wirephoto employment, and automatically at intervals have obtained the step-rate increases provided in the union contract. On the other hand, the appellee-employer contends that the collective bargaining contract providing for the step-rate system of compensation contemplated increases in the basic wages of wirephoto operators upon their attaining certain periodic steps of actual wirephoto experience on the job.

Since there is a difference in the way these parties have interpreted the language "wirephoto employment" in the collective bargaining contract, which initiated the step-rate system, it is incumbent upon us to determine the correct interpretation of the contract with reference to such language, and its effect upon the rights of these parties. The employer's interpretation of the contract was made clear to each appellant, upon his return from the service, in a letter which advised each of them of the number of weeks of wirephoto experience he had, and that the number of weeks he had entitled him to a certain number of years of wirephoto experience at a given rate. The union's interpretation of the contract was made equally clear in a letter to all members, which stated in part as follows: "Veterans returning to the wire-

photo classification should not confuse the scales based on 'wirephoto employment' with their seniority dates. The step-up scales are for actual experience as wirephoto operators and time spent in the armed forces is not credited as such." We can find no evidence in the record of any other intention of the parties than that progression up the step-rate ladder would be based solely upon actual on-the-job wirephoto experience, and not upon seniority. The appellants do not offer any evidence to support their contention, but merely point to the fact that the contract uses the language "wirephoto employment" instead of "wirephoto experience." Their position is too narrowly confined to be accepted in the light of the demonstrated intention of the parties.

The step-rate system of compensation is something entirely separate and distinct from seniority. Seniority begins when an employee's pay begins, and continues so long as he is in the employment, regardless of whether he is laid off, on vacation, or (by the terms of the Act under which this suit was brought) in the military service. It results in certain preferential treatment based upon the length of the employee's service. In this case, both appellants admitted that the step-rate provisions were to be distinguished from the seniority provisions, and that there were substantial advantages based on seniority, including assignment of hours, choice of days off, retention of job in the event of a reduction of workers, bidding for vacancies in existing or new assignments, choice of vacation dates, and the payment of a wage differential based on seniority. Appellants admitted that their seniority had not been affected by their military service.

The step-rate system places a monetary value on experience. Both appellants in this case testified that wirephoto work requires a certain knowledge, dexterity, special skill, and proficiency, which comes only from experience on the job. The appellants contend that, because no test or examination is given before each progression, the resulting pay increases are automatic with the passing of time, and therefore the step-rate system is synonymous with seniority; and they also contend that the provision of the statute for veterans to be credited with seniority for time spent in military service requires that they be given credit in the step-rate system for their time spent in military service. We cannot follow appellants' contention, because we are convinced that progress in this step-rate system was intended to be based solely upon wirephoto experience. Time spent in the service of our armed forces, however praiseworthy it may be, is not necessarily wirephoto experience in any sense of the word, and we can find no language in the statute which authorizes us to call it such.

The Act by its terms requires the returning service man to be "considered as having been on furlough or leave of absence" during his military service, and clearly does not require him to be put in a position, when he returns, that he could not have attained had he not had a certain amount of experience. The findings below, that appellants were given all of the rights to which they were entitled under the Act, were amply supported by the evidence. The judgment appealed from is affirmed.

Affirmed.